## Commonwealth *vs.* Rudolph C. Mitchell, Jr.

No. 05-P-1246.

Worcester. June 8, 2006. - October 13, 2006.

Present: Grasso, Doerfer, & Mills, JJ.

*Burglary. Statute,* Construction. *Assault and Battery. Practice, Criminal,* Instructions to jury. *Intent.*

At the trial of indictments charging, inter alia, armed burglary, the judge properly denied the defendant's motion for a required finding of not guilty, where the phrase "any person being then lawfully therein" in G. L. c. 266, § 14, did not preclude the defendant from being convicted of armed burglary merely because the victim came home after the defendant broke and entered her home, in that the time of the assault, not the time of the entry, was the relevant focus. [557-563]

At the trial of indictments charging, inter alia, assault and battery, the judge's instruction to the jury regarding intent, while erroneous, did not give rise to a substantial risk of a miscarriage of justice, where the jury were not presented with a factual scenario from which they likely would have concluded that the defendant's contact with the victim was the accidental result of an intentional and lawful intermediate act. [563-566]

Indictments found and returned in the Superior Court Department on February 11, 2003.

The cases were tried before *Peter W. Agnes, Jr.,* J.

*Richard B. Klibaner* for the defendant.

*Meghan E. Hallock,* Assistant District Attorney, for the Commonwealth.

Doerfer, J. This case requires us to examine G. L. c. 266, § 14 (armed burglary), to determine whether it covers a breaking and entering of a dwelling with intent to commit a felony and a subsequent assault on a person lawfully therein even though that person arrived home after the break while the intruder was still present. We hold that it does.[1]

---

[1] We also consider a problem with the jury charge in the trial of an indict-

*Facts.* The jury could have found the following facts. The victim and the defendant, Rudolph C. Mitchell, Jr., had an intermittent romantic relationship beginning in February, 2001. On October 8, 2002, the defendant telephoned the victim and asked her to pick him up from the mall. She refused, hung up the telephone, and left her home. While she was out, the defendant entered her home through the front door, which was locked. When she returned around 10:45 P.M., the victim and the defendant became involved in a violent struggle. The defendant repeatedly hit and kicked the victim. During the struggle, the defendant threw the victim's head against the refrigerator and cabinet doors, causing visible dents to both. The victim testified that the defendant repeatedly threatened to kill her. The defendant stood over the victim, began to strangle her, and pulled a telephone cord around her neck. When the police arrived, they found the defendant approximately fifteen feet from the victim. She was lying on the floor with her face and clothes covered in blood; her eyes were swollen and her nose appeared to be broken. In response to an officer's question, the victim told the police that the defendant had beaten her. The police arrested the defendant after a struggle, and he was subsequently indicted for, inter alia, armed burglary, assault with intent to murder, attempted murder, assault and battery by means of a dangerous weapon, assault and battery on a police officer, and violation of a restraining order, all based on the October 8, 2002, incident. The defendant was convicted of assault and battery by means of a dangerous weapon, assault and battery on a police officer, violation of a restraining order, and armed burglary. He appeals the armed burglary conviction.

*Armed burglary.* The relevant part of the armed burglary statute, G. L. c. 266, § 14, amended by St. 1998, c. 180, § 65, provides:

> "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully

---

ment alleging an earlier assault and battery by the defendant upon the same victim.

> therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished . . . ."[2]

To interpret this statute it is also helpful to have in mind the terms of the unarmed burglary statute, G. L. c. 266, § 15:

> "Whoever breaks and enters a dwelling house in the night time, with the intent mentioned in the preceding section, or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein, shall be punished . . . ."

The defendant argues that his motion for a required finding of not guilty should have been allowed since the victim was not at home when he entered the dwelling. Thus, he argues, she was not, in the words of G. L. c. 266, § 14, "then lawfully therein." She was of course lawfully in her dwelling while the defendant was still there pursuant to his breaking and entering and subsequent assault on her, although she arrived after his entry. The simple answer to this argument is that the phrase "any person being then lawfully therein" does not refer to the moment of entry (or breaking, or becoming armed), but rather to the time during which the intruder is in the premises pursuant to his felonious entry.

We note that the Legislature distinguished two time periods when referring to the possession of a dangerous weapon: "at the time of such breaking or entry" or "so arming himself in such house." The Legislature could have similarly stated, "any person being lawfully therein at the time of such breaking or entry," but did not. Cf. *Commonwealth* v. *Galvin*, 388 Mass. 326, 330 (1983) (when a statute employs specific language in one portion, and excludes it in another, the language should not be implied where it is missing); 2A Singer, Sutherland Statutory

---

[2]We note that "armed burglary" does not require that the defendant be armed at the time of breaking or entering, only that he either subsequently armed himself or subsequently committed an actual assault.

Construction § 46.06 (6th ed. 2000). This implies a more general meaning for the indefinite reference "then," to include the span of time that follows the entry.

Although the point does not appear to have been specifically decided until now, there were similar facts in *Commonwealth* v. *Goldoff*, 24 Mass. App. Ct. 458 (1987). There, the defendant had entered the relevant space before the victim arrived, and then assaulted the victim as the defendant was making his escape. We only discussed the issue whether a common hallway in an apartment building was part of a dwelling for the purposes of burglary statutes, and concluded that it was. *Id.* at 462-464. We did not note any additional difficulties presented by the fact that the defendant arrived some time before the victim.

In *Commonwealth* v. *Hallums*, 61 Mass. App. Ct. 50, 53 (2004), we assumed that the armed burglary statute required that the victim be present at the time of entry, but held that the evidence permitted the jury to find that the victim was in his home at the time the defendant entered, even though the defendant gained entry by pushing the victim ahead of him through the door into the victim's house. Thus, it was not necessary to consider whether it would make any difference if the defendant had stepped through the door first.[3]

Other States have considered this problem in the context of their own particular statutes. Because the language of Massachusetts' armed burglary statute is unique, other State courts' interpretations of their analogous statutes have only limited value. See *United States* v. *Hill*, 863 F.2d 1575, 1582 n.5 (11th Cir. 1989). A minority of States require the physical presence of a victim in the dwelling at the time of the breaking and entry in order to constitute a higher degree of the crime of burglary. See Annot., Occupant's Absence from Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering, 20 A.L.R.4th 349, 355-356 (1983). See, e.g., *State* v. *Nelson*,

---

[3]In *Commonwealth* v. *Rolon*, 438 Mass. 808 (2003), the crime of armed burglary was the predicate for an indictment of felony-murder. The court, *id.* at 817 n.8, cited *Commonwealth* v. *Gordon*, 42 Mass. App. Ct. 601, 603 (1997), in which we paraphrased G. L. c. 266, § 14, and outlined the elements of the crime of armed burglary, noting that it could be committed by being or becoming armed or by committing an actual assault. Neither case discusses the question whether a victim need be present at the time of the burglary.

523 N.W.2d 667, 670 (Minn. Ct. App. 1994) (conviction of burglary in the first degree reversed where the victims were not present in their home when the defendant entered)[4]; *State* v. *Tippett*, 270 N.C. 588, 595 (1967) (statute[5] requires the presence of someone at the time of the breaking and entering).

Other States considering this situation have reached the opposite conclusion. See *United States* v. *Hill*, 863 F.2d at 1582 n.5. See also *State* v. *Reed*, 8 Kan. App. 2d 615, 616 (1983) (possible danger to human life during an aggravated burglary is just as great regardless of when during the burglary the victim comes to be in the building)[6]; *Johnson* v. *Commonwealth*, 18 Va. App. 441, 446-447 (1994) (rejecting the argument that the phrase "while said dwelling is occupied" in the relevant statute[7]

---

[4]The version of the relevant statute in effect when *State* v. *Nelson* was decided, Minn Stat. § 609.582, subd. 1 (1992), stated in part, "Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, . . . commits burglary in the first degree . . . if: (a) the building is a dwelling and another person, not an accomplice, is present in it; (b) the burglar possesses, when entering or at any time while in the building, . . . a dangerous weapon . . . ; (c) the burglar assaults a person within the building . . . ." See *State* v. *Nelson*, 523 N.W.2d at 669. In 1995, the statute was amended so that § 609.582, subd. 1(a), now states, "the building is a dwelling and another person, not an accomplice, is present in it when the burglar enters or at any time while the burglar is in the building." Compare G. L. c. 266, § 14.

[5]North Carolina Gen. Stat. Ann. § 14-51 (LexisNexis 2005) provides in part, "There shall be two degrees in the crime of burglary as defined at the common law. If the crime be committed in a dwelling house, or in a room used as a sleeping apartment in any building, and any person is in the actual occupation of any part of said dwelling house or sleeping apartment at the time of the commission of such crime, it shall be burglary in the first degree." There is no requirement, as in G. L. c. 266, § 14, that the intruder be armed, arm himself in the dwelling, or make an actual assault. Furthermore, the North Carolina statute specifically states that the dwelling must be occupied "at the time of the commission of such crime."

[6]Kansas Stat. Ann. § 21-3716 (1995) provides in relevant part, "Aggravated burglary is knowingly and without authority entering into or remaining within any building . . . or other structure . . . in which there is a human being, with intent to commit a felony . . . therein."

[7]Virginia Code Ann. § 18.2-92 (LexisNexis 2004) provides, "If any person break and enter a dwelling house while said dwelling is occupied, either in the day or nighttime, with the intent to commit any misdemeanor except assault and battery or trespass, he shall be guilty of a Class 6 felony. However, if the person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony." Virginia Code Ann. § 18.2-89 (LexisNexis 2004)

required that at least one occupant be physically present in the dwelling at the time of the breaking and entering).[8,9]

Although the Model Penal Code does not specifically address the situation in which the victim arrives after the defendant's breaking and entry into the structure, a defendant who committed an assault "in the course of committing the offense" would be charged with the highest degree of burglary. See American Law Institute, Model Penal Code & Commentaries § 221.1 (1980).[10] As a result, it is of no consequence whether the victim

provides in relevant part, "If any person break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein, he shall be guilty of burglary . . . , however, that if such person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony."

[8]In reaching this result, the *Johnson* court relied on *Rash* v. *Commonwealth*, 9 Va. App. 22, 26 (1989), in which it had held that burglary under Va. Code Ann. § 18.2-89 did not require the physical presence of an occupant during the commission of the crime.

[9]In many other States, however, this problem does not arise at all because their statutes clearly provide that an intruder may be charged with aggravated burglary if he was armed or committed an assault at any point during the commission of the crime. See, e.g., *People* v. *Perrin*, 56 A.D.2d 957, 958 (N.Y. 1977) ("An individual is guilty of burglary in the first degree if he enters a dwelling at night with the requisite mental state and, while inside the dwelling, 'Causes physical injury to any person who is not a participant in the crime' " [citation omitted]).

[10]Model Penal Code § 221.1 (1980) provides in relevant part, "(1) Burglary Defined. A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein . . . . (2) Grading. Burglary is a felony of the second degree if it is perpetrated in the dwelling of another at night, or if, in the course of committing the offense, the actor: (a) . . . inflicts or attempts to inflict bodily injury on anyone; or (b) is armed with explosives or a deadly weapon. Otherwise, burglary is a felony of the third degree. An act shall be deemed 'in the course of committing' an offense if it occurs in an attempt to commit the offense or in flight after the attempt or commission." "In the course of committing the offense" applies to "conduct that occurs between the period beginning with an attempt to commit the offense of burglary and ending with the conclusion of immediate flight after the attempt or commission of the offense. Model Penal Code § 221.1 comment 4, at 81.

Though the Model Penal Code regards the actual presence or temporary absence of an occupant from a normally occupied structure (dwelling) as often "purely a matter of chance so far as the intruder is concerned," Model Penal Code § 221.1 comment 3, at 72, it recognizes that the purpose of burglary statutes is to punish "intrusion[s] into occupied structures and the accompanying terrorization of the occupants." Model Penal Code § 221.1 comment 4, at

is present at the time of the defendant's unlawful entry, or arrives later. See *ibid.*

Although it is possible to interpret the word "then" in our statute to refer to the moment of breaking or entering, the more logical reference is to the time during which the burglar is present in the dwelling as a result of his felonious breaking and entering. The aggravation of the crime is based on the lawful presence of a person in the dwelling during the time the burglar is present. Cf. *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 64 (1997) (home invasion statute, G. L. c. 265, § 18C, carries a harsher penalty than the armed burglary statute because of the additional element that "intruder knows, or should know, that an occupant is present before he enters the dwelling" and the presence of an occupant "heightens the risk of a potentially deadly encounter"). Where the crime is committed by one who has armed himself, before or after entering, the aggravation is based on the inherent threat to the occupant during the event. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 109 (1994) ("unlawful entry during the night time into a dwelling . . . inevitably poses a high degree of danger to any and all occupants"). It should not depend on whether the occupant happens to arrive in the premises before or after the entry of the intruder. See *State* v. *Reed*, 8 Kan. App. 2d at 616.

The case is even stronger where the aggravation is based upon an actual assault on a lawful occupant. See 12A C.J.S. Burglary § 8, at 175 (2004) (physical injury inflicted during the commission of the burglary elevates the burglary to first degree).[11] It makes no sense to regard an assault by a burglar on someone in her home as less of an aggravation merely because the victim happened to arrive home during the course of the burglary, and the statute should not be interpreted to require that result.

The point is made even clearer by observing that the defendant on these facts could not be convicted of unarmed

79. Because those intrusions accompanied by actual violence or the threat of violence are the most serious instances of the offense, armed burglary or the commission of an assault during the course of the burglary elevates the crime to a second-degree felony under the Model Penal Code. See *id.* at 80-82.

[11] Thus G. L. c. 266, § 14, might be better titled "aggravated burglary" rather than "armed burglary."

burglary. A plain reading of G. L. c. 266, § 15, specifically excludes the case (which we have here) in which an assault actually takes place. See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001) ("statutory language should be given effect consistent with its plain meaning"). Furthermore, the relationship between §§ 14 and 15 of G. L. c. 266 indicates that they should be interpreted together.[12] When "two or more statutes relate to the same subject . . . , they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). Evaluating §§ 14 and 15 together, it seems clear that the Legislature intended that when an assault takes place during a burglary, the offense should be charged as armed burglary, not as simple burglary. See *Devoe* v. *Commonwealth*, 3 Met. 316, 327 (1841). See also *Commonwealth* v. *Powell*, 10 Mass. App. Ct. 57, 59 (1980) (where there was a dispute whether the intruder armed himself in the dwelling, a jury could have acquitted the defendant of the greater offense of armed burglary and instead convicted the defendant of unarmed burglary).

We conclude that the phrase "any person being then lawfully therein" does not preclude a defendant from being convicted under G. L. c. 266, § 14, merely because the victim came home after the defendant broke and entered her home. Although the victim was not present in the dwelling at the time of the defendant's breaking and entry, she was lawfully present during the course of the burglary. The victim of an assault is "present" at the time of the assault, and it is the time of the assault that is relevant, not the time of the entry.[13]

*The earlier assault and battery incident.* In the late evening

[12]At common law and under the earliest burglary statutes, burglary was the breaking and entering of the dwelling house of another, at night, with the intent to commit a felony. The 1805 burglary statute was the first to distinguish armed from unarmed burglary and vary the punishment accordingly. *Commonwealth* v. *Hope*, 22 Pick. 1, 9-10 (1839). Beginning with this statute, unarmed burglary (current G. L. c. 266, § 15) has been defined in reference to the armed burglary statute with the purpose of covering those situations where the intruder was not armed, did not arm himself in the dwelling, or did not commit an assault. See *Devoe* v. *Commonwealth*, 3 Met. 316, 327 (1841).

[13]In view of our resolution of this issue we do not address the dubious argument of the Commonwealth that the requirement that a person be present

of August 30, 2002, the victim and the defendant had a violent argument in the victim's trailer home. During the course of this argument, the defendant raised his hand, on which he was possibly wearing a broken ring, and struck the left side of the victim's face. After receiving a 911 hang-up telephone call from the victim's residence, police officers arrived at the home early in the morning of August 31, 2002. They found the victim down the street from her home. She was visibly upset, had bruises on one side of her face and head, and her eye was swollen. She informed one police officer that the defendant, her former boyfriend, had beaten her and that he was still inside her home. Discovering the defendant on the trailer's roof, where he had gone to avoid them, the police officers ordered him to come down, and when he did, they arrested him. A week later, the victim and the defendant resumed their relationship.

Based on these events the defendant was indicted for assault and battery, resisting arrest, and malicious destruction of property over $250.[14] He was convicted of assault and battery, which he now appeals.

In order to convict the defendant of assault and battery, the Commonwealth had the burden of proving that the defendant touched the victim without having any right or excuse to do so and that the defendant's touching of the victim was intentional. The trial judge instructed the jury with the following intent charge:

> "It is not necessary that the defendant had specifically intended to touch [the victim]; it's only necessary that he intentionally did the act which resulted in the touching, as opposed to having done it accidentally."

The holdings in *Commonwealth* v. *Ford*, 424 Mass. 709, 711 (1997), and *Commonwealth* v. *Moore*, 36 Mass. App. Ct. 455, 459 (1994), make clear that this charge was in error. In *Commonwealth* v. *Ford*, *supra*, the court explained that "it is incor-

---

only applies to an entry followed by a breaking and not to a breaking followed by an entry. We would be inclined to reject such a strained reading of the statute.

[14]These charges were tried together with the charges arising out of the October 8, 2002, incident.

rect to instruct the jury that the defendant may be convicted on a finding that the defendant intentionally did the act which resulted in the touching." The correct formulation of intent requires a finding that the defendant intended to touch the victim. See *Commonwealth* v. *Garofalo*, 46 Mass. App. Ct. 191, 192-193 (1999).

Because the defendant did not object to the intent charge at trial, we review the erroneous charge under a substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Ford*, 424 Mass. at 712. When reviewing on a substantial risk of a miscarriage of justice standard, "[t]he critical question . . . is whether, viewing the charge in its entirety, there was a reasonable likelihood that the jury could have understood the judge's instructions to allow the defendant's conviction on proof other than that he had engaged in an intentional and unjustified touching of the person of the victim." *Commonwealth* v. *Garofalo*, 46 Mass. App. Ct. at 192 n.3. For the reasons set forth below, we believe that the judge's instructions did not present such a risk.

We review the evidence of the August 31 incident in the light most favorable to the defendant. The defendant and the victim were at home arguing. The defendant testified that the victim slapped him three or four times. He further testified that after the third slap, he raised his hand in order to block her blows and hit her back. He claimed that he did this to protect himself. The defendant testified that he was wearing a broken ring on the hand he raised to the victim and that he did not intend that this ring injure the victim as it did.

Based on this evidence, the jury were not presented with a factual scenario from which they likely would have concluded that the defendant's contact with the victim was the accidental result of an intentional and lawful intermediate act. See *Commonwealth* v. *Picher*, 46 Mass. App. Ct. 409, 411 (1999). As in *Commonwealth* v. *Medina*, 43 Mass. App. Ct. 534, 536 (1997), where the defendant similarly claimed self-defense, the evidence in this case is sufficiently overwhelming to show that the defendant's touching of the victim was not accidental. The victim testified that the defendant hit her repeatedly, and the defendant told an officer after his arrest that he hit the victim

because she was cheating on him. According to the defendant's own testimony, he intentionally raised his hand to the victim, though he claims he only did so to fend off the victim's attack. His testimony only supports the assertion that he did not intend the broken ring to hit her face; it does not support the proposition that he did not intend to hit her. At trial, the defendant did not emphasize that the hitting occurred by accident, instead focusing on self-defense. See *id.* at 535-536. Thus, "the erroneous instruction did not relate to an issue actively contested at trial." See *id.* at 535.

In *Commonwealth* v. *Picher*, 46 Mass. App. Ct. at 413 n.5, we explained that the critical vice in the intent instruction at issue is that "the challenged language could well have confused the jury." See *Commonwealth* v. *Garofalo*, 46 Mass. App. Ct. at 192 n.3. In this case, by convicting the defendant of assault and battery, the jury rejected his claims that he was justified in hitting the victim in order to defend himself. It is unlikely that the erroneous instruction allowed the jury to convict the defendant solely upon a theory that the incident occurred as an accidental touching that was the result of an intentional act. See *Commonwealth* v. *Picher*, 46 Mass. App. Ct. at 411. Viewing the charge in its entirety, as well as the evidence before the jury, "there was no reasonable risk that the jury could have been misled by the challenged instruction to convict the defendant of an unintentional or lawful act." *Id.* at 413 n.5. Thus, this error did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*