NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-692

COMMONWEALTH

vs.

NZAMENYA RUKEBESHA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of two counts of assault and battery upon a police officer, in violation of G. L. c. 265, § 13D; resisting arrest, in violation of G. L. c. 268, § 32B; assault and battery upon a person over sixty years of age with injury, in violation of G. L. c. 265, § 13K (b); and assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a).  On appeal, he argues the evidence was insufficient to support his convictions.  We affirm.

Background.  We recite the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-

677 (1979).  On January 4, 2023, the defendant was at home with his sixty-four year old wife (victim or wife), and their adult son.  The defendant, who had been drinking that night, asked his wife to give him his shower sandals.  She testified that she told the defendant where the sandals were "instead of going to get them, so he came and hit me."  The defendant punched the victim in the eye and on the forehead with his closed fist.  The victim's eye became swollen, and she instructed the son to call 911 so that she could go to the hospital.

Officers Nicholas Kydd and Roderick Wiggins were dispatched to the family's apartment.  Wiggins was driving a marked cruiser and wearing a police carrier vest with a Lowell Police patch, his badge and other "[police] gear" over his uniform.  On arrival, the officers spoke with the son and the victim, who was holding her eye and crying.  The son interpreted for the victim because neither she nor the defendant spoke English.  The officers then made their way to a back room in the apartment, where they located the defendant.

The officers, using the son as an interpreter, informed the defendant that he was under arrest.  Wiggins had his handcuffs out during this exchange.  The defendant did not cooperate and retreated to another back room, where there was no light.  The officers then took the defendant down onto a mattress and urged him to calm down, but the defendant continued resisting and

2

wrestling them until all three men ended up on the ground. During the altercation, the defendant headbutted both Wiggins and Kydd.  Eventually, the officers were able to place the defendant in handcuffs and carried him to the kitchen to wait for more police assistance to arrive.

At the close of the Commonwealth's case and the close of all evidence, the defendant moved for a required finding of not guilty.  The trial judge denied both motions.  The defendant appealed, challenging the trial judge's conclusion that the Commonwealth presented sufficient evidence to support his convictions.

Discussion.  On appeal the defendant challenges the denial of his motions for a required finding of not guilty made at the close of the Commonwealth's case and the close of all the evidence.

In evaluating the denial of a motion for a required finding of not guilty, we review the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"

3

Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

"Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, '[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case.'" Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

1. Assault and battery upon the defendant's wife. The defendant asserts that the Commonwealth's evidence was insufficient to prove that he committed an assault and battery on the victim because the Commonwealth did not prove that he intended to make contact with the victim. See Commonwealth v. Ford, 424 Mass. 709, 711 (1997) (conviction of assault and battery requires proof that touching did not happen by accident); Commonwealth v. Correia, 50 Mass. App. Ct. 455, 456 (2000) (assault and battery is defined as "intentional and unjustified use of force upon the person of another, however slight" [citation omitted]). We are not persuaded.

4

Here, during the Commonwealth's case-in-chief, the victim testified that she and the defendant were "at peace" before he hit her. But after the victim did not get the defendant's shower sandals for him, the defendant "punched" her twice with his fists: once in the eye, then on the forehead. The defendant argues that the victim's testimony claiming he hit her is insufficient on its own to prove intent to make contact with her. Not so. A reasonable jury could infer from the victim's testimony that the defendant intentionally punched her when she told him where the sandals were rather than get them for him.[1] See Commonwealth v. Lahens, 100 Mass. App. Ct. 310, 318 (2021) (defendant's intent may be established circumstantially). The Commonwealth's evidence was sufficient to prove that the defendant intended to make contact with the victim.

Nor did the defendant's evidence deteriorate the Commonwealth's case. The defendant testified that he hit the victim with his elbow, but that it was not intentional. The jury were not required to credit the defendant's testimony, and the additional evidence showing that the defendant was seventy

_____

[1] The verb "punch" carries with it a connotation of force delivered by a closed fist. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/punch ("punch" means "to strike with a forward thrust especially of the fist" or "to drive or push forcibly by or as if by a punch").

years old and had suffered a disabling leg injury in 1990 would not preclude a rational jury from inferring that the defendant intended to punch the victim with his fist.  See Kater v. Commonwealth, 421 Mass. 17, 20 (1995) (deterioration occurs when "evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect").

The defendant also argues that the victim's injuries did not qualify as "bodily injury" under G. L. c. 265, § 13K.  For our purposes, "bodily injury" is defined as "substantial impairment of the physical condition, including, but not limited to, any burn, fracture of any bone, subdural hematoma, injury to any internal organ, or any injury which occurs as the result of repeated harm to any bodily function or organ, including human skin."  G. L. c. 265, § 13K (a).  "A 'substantial impairment of the physical condition' . . . occurs where an injury considerably or significantly compromises the usual functioning of any part of the victim's body."  Commonwealth v. Robinson, 103 Mass. App. Ct. 361, 366 (2023), quoting Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 489-490 (2018).

Here, the victim's testimony was sufficient to prove she suffered a bodily injury under the statute.  She testified that the defendant's first punch caused her eye to become so swollen that she could not see out of it for a week, and that she had to

6

stay in a hospital overnight. She also testified that she still experienced pain and vision difficulties at the time of trial, five months later. This testimony demonstrates that the victim's injury compromised the usual functioning of her eye. See Ryan, 93 Mass. App. Ct. at 491 (sufficient evidence of bodily injury where victim's hip injury was "severe enough to cause him pain and hamper his mobility for several weeks"). Contrast Commonwealth v. Sudler, 94 Mass. App. Ct. 150, 155 (2018) (insufficient evidence of bodily injury where there was no testimony "that use of the victim's fingers was hampered for any period of time" and "no evidence of treatment, continued medical care, or any recovery period" was introduced).

Where the defendant's case did not include evidence challenging this aspect of the victim's testimony, we are satisfied that the Commonwealth's case had not deteriorated by the close of all evidence. See O'Laughlin, 446 Mass. at 198.

2. Assault and battery upon a police officer (Kydd). The defendant asserts that the Commonwealth's evidence was insufficient to prove that, as to Kydd, he committed an assault and battery on a police officer.[2] He argues that the Commonwealth proved neither that he intentionally made contact

_____

[2] The defendant does not challenge his conviction of assault and battery on a police officer pertaining to Wiggins.

7

with Kydd nor that he was aware that Kydd was a police officer engaged in his duties.

The crime of assault and battery on a police officer requires that "the officer must be engaged in the performance of his duties at the time and the defendant must know that the victim was an officer engaged in the performance of his duties." Commonwealth v. Moore, 36 Mass. App. Ct. 455, 461 (1994).

Here, Wiggins' testimony about the defendant's physical resistance to the officers was sufficient circumstantial evidence to demonstrate that the defendant intended to make contact with them. See Lahens, 100 Mass. App. Ct. at 318. Wiggins testified that the defendant wrestled and headbutted both officers, and that he pushed and shoved their arms away while they tried to restrain him. The defendant's contention that intent cannot be inferred in this case because there was no light in the bedroom and the situation was confusing is unavailing. That was an issue for the jury. Further, the defendant presented no evidence contradicting Wiggins' testimony at trial, so the sufficiency of the Commonwealth's evidence did not deteriorate at the close of all evidence. In the light most favorable to the Commonwealth, the jury's inference that the defendant intended to make contact with Kydd -- even amidst the darkness and confusion -- was "reasonable and possible." Waller, 90 Mass. App. Ct. at 303.

8

The defendant's argument that there was insufficient evidence to prove that the defendant knew Kydd was a police officer similarly fails.  The defendant correctly points out that, at the close of its case, the Commonwealth had presented no direct evidence that Kydd was in uniform.  However, Wiggins testified that he was in uniform, driving a marked cruiser, and was dispatched to assist Kydd in the area Kydd was responsible for patrolling.  Given Wiggins' testimony, it was "wholly within [the jury's] province" to conclude that Kydd was in uniform, Commonwealth v. Lao, 443 Mass. 770, 779 (2005), and that the defendant knew that Kydd was a police officer.

The only evidence the defendant offered to support his argument on this point is that he is "not native to [the United States]."  The Commonwealth's case did not deteriorate because, in the light most favorable to the Commonwealth, the introduction of this evidence would not prevent any rational juror from concluding that the defendant knew Kydd was a police officer.  See Latimore, 378 Mass. at 677.

3.  Resisting arrest.  The defendant argues that the Commonwealth's evidence was insufficient to prove that the defendant understood he was being arrested, which he correctly identifies as a required element of resisting arrest.  See Commonwealth v. Grant, 71 Mass. App. Ct. 205, 208 (2008).

9

"The standard for determining whether a defendant understood that he was being arrested is objective -- whether a reasonable person in the defendant's circumstances would have so understood."  Grant, 71 Mass. App. Ct. at 208.  "It is not necessary that officers use the word 'arrest' . . . ."  Commonwealth v. Portee, 82 Mass. App. Ct. 829, 833 (2012).

Here, Wiggins, in uniform after arriving in a marked police cruiser, displayed a pair of handcuffs to the defendant.  Although the defendant could not speak English, the defendant's son acted as an interpreter for the officers as they attempted to inform the defendant that he was under arrest.  Wiggins also testified that, once in the bedroom, he and Kydd worked together and tried to grab the defendant's arms.  On this evidence, the jury could have reasonably inferred that the uniformed police officers' words and actions objectively communicated to the defendant, even though he did not speak English, that he was under arrest."  Commonwealth v. Soun, 82 Mass. App. Ct. 32, 35 (2012) (situations commonly associated with arrest create required level of understanding); Grant, 71 Mass. App. Ct. at 209.  In response, the defendant began swearing at them and

pushing and headbutting them away, from which the jury could reasonably infer that the defendant resisted arrest.

Judgments affirmed.

By the Court (Henry, Hand & Brennan, JJ.[3]),

Paul Little

Clerk

Entered:  September 30, 2025.

---

[3] The panelists are listed in order of seniority.